UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Nisael Reynoso Gomez, <br><br> Petitioner, <br><br> v. <br><br> PATRICIA HYDE, Acting Director of Boston Field Office, United States Immigration and Customs Enforcement, et al., <br><br> Respondents. | Civil Action No. 1:25-cv-11497-GAO |

## RESPONDENTS' OPPOSITION TO
## PETITION FOR WRIT OF HABEAS CORPUS

Respondents, by and through their attorney, Leah B. Foley, United States Attorney for the

District of Massachusetts, submit this opposition to Petitioner Nisael Reynoso Gomez's Habeas

Petition.  Doc. No. 1.  Respondents respond to the Petition as contemplated by Rules 4 and 5 of

the Federal Rules Governing Section 2254.[1]

## INTRODUCTION

This Court cannot extend the writ of habeas corpus unless an individual "is in custody in

violation of the Constitution or laws or treaties of the United States".  28 U.S.C. § 2241(c)(3).

Petitioner fails to carry his burden to demonstrate that his detention by U.S. Immigration and

Customs Enforcement ("ICE") violates the Immigration and Nationality Act ("INA"), its

implementing regulations, or the Constitution.  Indeed, Petitioner does not even cite a statute,

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

regulation, or constitutional provision that ICE has allegedly violated.  As such, this Court must

deny the Petition.  Denial of this Petition is also appropriate as Petitioner can seek release before

an immigration judge ("IJ") through a bond hearing in Immigration Court and therefore

Petitioner has failed to exhaust his available remedy to obtain the relief he asks this Court to

provide in the first instance.

Finally, this Court lacks jurisdiction to review ICE's discretionary decision to initiate

removal proceedings against Petitioner, 8 U.S.C. § 1252(g), as well as ICE's discretionary

decisions to arrest and detain Petitioner pending his removal proceedings, 8 U.S.C. § 1226(e).

As such, this Petition must be dismissed.

## BACKGROUND

### A.  Petitioner's Immigration History.

Petitioner is a native and citizen of the Dominican Republic.  *See* Declaration of Assistant

Field Office Director, Keith Chan, ¶ 6, attached as Exhibit A.  On or about June 29, 2021,

Petitioner was admitted to the United States a B-2 nonimmigrant visitor with authorization to

remain the United States for six months.  *Id.*, ¶ 7.  Petitioner did not depart the United States as

required.  *Id.*  U.S. Citizenship and Immigration Services ("USCIS") approved Petitioner's I-360,

Special Immigrant Juvenile ("SIJ") petition on July 24, 2023.  *Id.*, ¶ 9.  USCIS also exercised its

discretion and granted Petitioner deferred action concerning the initiation of removal

proceedings on that same date.  *Id.*

On May 23, 2025, ICE encountered Petitioner while performing a targeted arrest on an

another individual.  *Id.*, ¶ 10.  During the encounter, ICE determined that Petitioner had

overstayed his B-2 nonimmigrant visa and therefore arrested and detained the Petitioner as he

lacked lawful status in the United States. *Id.*  On the same day, ICE served Petitioner a Notice to

Appear ("NTA"), placing him in removal proceedings and charging him as removable from the United States pursuant to 8 U.S.C. § 1227(a)(1)(B) in that he stayed longer than authorized. *Id.*, ¶ 11. ICE also made the determination to maintain Petitioner in custody as authorized by 8 U.S.C. § 1226(a). *Id.*, ¶¶ 5, 11. Petitioner then filed a request for a bond hearing with the Chelmsford (MA) Immigration Court and such hearing is scheduled for June 5, 2025. *Id.*, ¶ 13. On May 24, 2025, ICE transferred Petitioner to the Delany Hall Detention Center in New Jersey, where he remains detained in ICE custody. *Id.*, ¶ 12.

### B. Petitioner's Habeas Petition and this Court's Standing Order.

Petitioner filed this Petition on May 23, 2025. Doc. No. 1. He contends that his detention "is based on an unwarranted and unreasonable interpretation of 8 U.S.C. § 1226(a)" as ICE is holding him "in an unlawful, unreasonably prolonged or indefinite detention … without bond …". *Id.* at 1. He asserts that he has no criminal history and that he is a recipient of an approved I-360 SIJ Petition and deferred action. *Id.*, ¶ 4. Petitioner intends to apply for adjustment of status when he becomes statutorily eligible for such relief, and he also asserts he is eligible to apply for asylum. *Id.*, ¶¶ 9-10.

Petitioner claims that "persons such as himself [that] are neither a danger to the community nor a flight risk, and are being unreasonably held by ICE [] must be released under bond or on an order of supervision." *Id.*, ¶ 13. He asserts that his arrest and detention "are inexplicable and a capricious action by the government" because "he is highly likely to be successful in his removal proceedings before the Immigration Judge ….". *Id.*, ¶ 16. For these reasons, Petitioner contends that this Court should "order his immediate release, or set a bond hearing under the proper standard as soon as practicable". *Id.*, PRAYER FOR RELIEF.

On May 27, 2025, Chief Judge Saylor entered an Order that directed Respondents to respond to the Petition by June 3 and also ordered that ICE not transfer Petitioner to a district outside of Massachusetts without providing advance notice of the intended move.  Doc. No. 4. C.J. Saylor also ordered that Respondents provide notice to the Court if Petitioner was no longer in the district at the time of the Service Order and also that Petitioner not be removed from the United States until further order from the Court.  *Id.*   On May 29, Respondents filed notice with this Court that ICE had transferred Petitioner to Delany Hall Detention Center in New Jersey on May 24 prior to the Court's issuance of the Service Order.  Doc. No. 7.

### C.  Statutory and Regulatory Framework for Enforcement of Immigration Law.

The Immigration and Nationality Act provides a statutory scheme for the civil detention of aliens pending a decision during removal proceedings as well as once a final order of removal has been entered.  *See generally* 8 U.S.C. §§ 1225, 1226, 1231.   The time and circumstances of entry, as well as the stage of the removal process, determines where an alien falls within this scheme and  whether detention of the alien is discretionary or mandatory.

For aliens who have entered the United States without inspection or who have been admitted but have stayed beyond the period of admission (like Petitioner), 8 U.S.C. § 1226 "generally governs the process of arresting and detaining . . . [noncitizens] pending their removal." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).   Section 1226(a) provides the default rule that an alien "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *Id.*  § 1226(a).  As the Supreme Court has explained, this provision "creates authority for *anyone's* arrest or release under § 1226—and it gives the Secretary broad discretion as to both actions…." *Nielsen v. Preap*, 586 U.S. 392, 409 (2019) (emphasis in the original).

4

1. **Discretionary Detention and Initiation of Removal Proceedings under 8 U.S.C. § 1226(a).**

Pursuant to Section 1226(a), ICE has discretion to arrest an alien and then either continue detention for removal proceedings or to release the alien on "bond … or conditional parole." *Id.* § 1226(a)(1)-(2).  Per regulation, ICE has discretion to release "provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to proper or persons, and that the alien is likely to appear for any future proceeding."  8 C.F.R. § 236.1(c)(8).  If ICE opts for continued detention, the alien can seek review of that decision at a bond hearing before an Immigration Judge ("IJ").  *Id.* § 236.1(d)(1).  An IJ's decision to continue detaining an alien may be appealed to the Board of Immigration Appeals ("BIA").  8 C.F.R. § 236.1(d)(3).

ICE initiates removal proceedings with the issuance of a NTA with the Immigration Court that has jurisdiction over the location of the individual.  *See* 8 U.S.C. § 1229; 8 C.F.R. § 1003.14. Once an NTA is filed with the Immigration Court, the IJ "shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1).  Such proceeding "shall be the sole and exclusive procedure for determining whether an alien may be … removed from the United States."  *Id.* § 1229a(a)(3).  The government has "the burden of establishing by clear and convincing evidence" that an alien that was previously admitted to the United States is subject to removal from the United States.  *Id.* § 1229a(c)(3).  If the government meets this burden, the alien can apply for whatever forms of relief from removal he may be eligible.  *Id.* § 1229a(c)(4). If the IJ grants relief from removal and the government does not appeal to the BIA or is unsuccessful in such appeal, then the individual has lawful status and is not subject to removal from the United States.  If, however, the IJ orders an alien removed, such alien can appeal to the BIA and is not subject to removal until the BIA issues a decision on the appeal.  8 C.F.R. § 1241.1(a); 8 U.S.C. §

1231. If the BIA affirms the IJ's denial of an application for relief from removal, an alien can file a petition for review ("PFR") with the circuit court and can seek a stay of removal while the PFR is pending. 8 U.S.C. § 1252(a)(5) ("a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter…").

2. **Statutory and Regulatory Background Special Immigrant Juvenile Status.**

"The Immigration and Nationality Act of 1990 included a new form of immigration relief for non-citizen children." *Budhathoki v. Nielsen*, 898 F.3d 504, 508 (5th Cir. 2018). Specifically, "Congress established SIJ status in 1990 in order to protect abused, neglected or abandoned children who, with their families, illegally entered the United States, ... and it entrusted the review of SIJ petitions to USCIS, a component of DHS." *Osorio-Martinez v. Attorney General United States of America*, 893 F.3d 153, 162 (3d Cir. 2018) (quotations and citations omitted).

An individual can obtain SIJ classification when the applicant satisfies three statutory requirements. *L.F.O.P. v. Mayorkas*, 656 F. Supp. 3d 274, 276 (D. Mass. 2023). An individual with SIJ status can apply for adjustment of status if they are eligible, admissible, and an immigrant visa is immediately available. 8 U.S.C. § 1255; 8 C.F.R. § 245.1(e)(3)(i). If an application for adjustment of status is granted, the individual receives Lawful Permanent Resident status, i.e. a green card. 8 U.S.C. § 1255(a). As to an application for adjustment of status, the INA automatically exempts SIJ designees from a set of generally applicable grounds of inadmissibility and provides that other grounds of inadmissibility may be waived at the Attorney General's discretion. 8 U.S.C. §§ 1255(h)(2), 1182(a).

Under the INA, to adjust status, "an immigrant visa [must be] immediately available" at the time an application is filed and adjudicated. 8 U.S.C. § 1255(a); 8 C.F.R. § 245.1(a). A

6

limited number of immigrant visas to allow adjustment of status for SIJs are available each

year.  In 2022, USCIS recognized that "[d]ue to ongoing visa number unavailability, the

protection that Congress intended to afford SIJs through adjustment of status is often delayed

for years…".  USCIS Policy Alert-2022-10,

https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-

SIJAndDeferredAction.pdf.  As such, USCIS updated its policy guidance "to provide that

USCIS will consider granting deferred action on a case-by-case basis to noncitizens classified

as SIJs who are ineligible to apply for adjustment of status solely due to unavailable immigrant

visa numbers." *Id.*

USCIS made clear, however, that "[n]oncitizens without lawful status who have an

approved SIJ petition remain subject to removal" because "SIJ classification does not render a

noncitizen lawfully present, does not confer lawful status, and does not result in eligibility to

apply for employment authorization." *Id.*  USCIS therefore considered individuals with SIJ

status for deferred action which USCIS describes "an act of prosecutorial discretion that defers

proceedings to remove an alien from the United States for a certain period of time."

https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4 (last accessed June 3, 2025).

USCIS makes clear, however, that "[d]eferred action does not provide lawful status." *Id.*

USCIS also "reserves the right to terminate the grant of deferred action and revoke the related

employment authorization at any time as a matter of discretion." *Id.*

An individual who obtains SIJ status receives several important benefits, but is still

subject to arrest, detention, and removal from the United States if a final order of removal is

entered against such individual.  *See United States v. Granados-Alvarado*, 350 F. Supp. 3d 355,

357 (D. Md. 2018) (Explaining that while "[t]he SIJ program offers aliens a multitude of

benefits and protections, including the opportunity to seek lawful permanent resident status[,] … [i]n and of itself, though, an SIJ designation does not strip the U.S. government of all removal powers.")

## STANDARD OF REVIEW

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allopath Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted).  Title 28 U.S.C. § 2241 provides district courts with jurisdiction to hear federal habeas petitions unless Congress had separately stripped the court of jurisdiction to hear the claim.

To warrant a grant of writ of habeas corpus, the burden is on the petitioner to prove that his custody is in violation of the Constitution, laws, or treaties of the United States.  *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner."); *Farrell v. Lanagan,* 166 F.2d 845, 847 (1st Cir. 1948) ("The burden of proof is on the petitioner to establish denial of his constitutional rights. The court must be convinced by a preponderance of evidence.").

## ARGUMENT

**A.    Petitioner's Detention is Lawful and therefore the Petition must be Denied.**

ICE's detention of Petitioner is authorized by statute, regulation, and comports with the Constitution.  As such, this Petition must be denied.

### 1.    Petitioner's Detention is Authorized by Statute and Regulation.

ICE detained Petitioner pursuant to 8 U.S.C. § 1226(a) which allows for the detention of aliens for the purpose of removal proceedings.  Exh. A, Chan Decl., ¶ 5.  This authority

provides that ICE may detain an alien "pending a decision on whether [he] is to be removed from the United States."  8 U.S.C. § 1226(a).  This provision "creates authority for *anyone's* arrest or release under § 1226—and it gives [ICE] broad discretion as to both actions…." *Nielsen*, 586 U.S. at 409 (emphasis in the original).

Here, Petitioner sets forth no statute, regulation, or case law that supports his claim that ICE cannot arrest and detain him for purpose of removal proceedings.  His contention that ICE's detention is unlawful because he is subject to "unreasonably prolonged or indefinite detention … without bond" (Doc. No. 1 at 1) is patently incorrect as Petitioner has a bond hearing scheduled for June 5, 2025.

His claim that he is not "supposed to be detained or removed from the United States" (*id.*) due to his approved I-360 SIJ petition or USCIS' issuance of deferred action is also incorrect and he offers no support for such assertion.  Instead, as USCIS explains, "SIJ classification does not render a noncitizen lawfully present[] [and] does not confer lawful status." USCIS Policy Alert-2022-10, https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf .  Because Petitioner lacks lawful status in the United States, he remains amenable to arrest and detention as he is subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(1)(B) for overstaying the period of admission on his visitor visa.  Exh. A, ¶ 11.

Multiple courts have explained that SIJ designation does not forestall arrest, detention and removal from the United States if subject to a final order of removal.  For example, the U.S. Court of Appeals for the Third Circuit considered, and answered in the affirmative, the question of whether an SIJ recipient is subject to removal on account of his inadmissibility to the United States.  *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 432 (3d Cir. 2023).  In that case, the

individual was charged as inadmissible from the United States pursuant to 8 U.S.C. §

1182(a)(6)(A)(i) which provides that "[a]n alien present in the United States without being

admitted or paroled, or who arrives in the United States at any time or place other than as

designated by the Attorney General, is inadmissible." While this ground of inadmissibility does

not prevent an SIJ designee from applying for adjustment of status, *see* 8 U.S.C. § 1255(h)(2),

the court found that it does apply for purposes of *removal*. *Id.* at 433 (emphasis added). The

Third Circuit reasoned that "Congress could have rationally decided that SIJS recipients should

be given the opportunity to apply for adjustment of status, while also contemplating that they

may be removed if their application is denied or for another appropriate basis." *Id.*, n.11.

Similarly, in *Granados-Alvarado*, 350 F. Supp. 3d at 357, the district court held that "an

SIJ designation does not strip the U.S. government of all removal powers." Instead, "the

government retained the power to arrest, detain, and remove Granados-Alvarado in spite of his

SIJ status" because of his inadmissibility to the United States. *Id.* The court explained that "§

1255(h) does not accord Granados-Alvarado parolee status for any purposes other than for his

application for adjustment of status. … It does not make his presence lawful …". *Id.* at 362.

*See also*, *Cruz-Gonzalez on behalf of D.M.S.C. v. Kelly*, No. CV 16-5727, 2017 WL 3390234, at

*5 (E.D. Pa. Aug. 7, 2017) (Rejecting argument that SIJ approval grants lawful status and

prevents removal from the United States and also agreeing with government's argument that

being "deemed paroled" under 8 U.S.C. § 1255(h) "does not cancel a final order of removal or an

underlying basis of inadmissibility or removability.").

Here, USCIS' approval of Petitioner's SIJ petition did not provide him with lawful immigration status in the United States and does not bar ICE from arresting and detaining him for purposes of removal proceedings.[2]

Additionally, Petitioner's claim that detention is unlawful because USCIS previously issued him deferred action is without merit. As USCIS makes clear, "[d]eferred action does not provide lawful status." https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4 . Instead, according to USCIS, deferred action "is an act of prosecutorial discretion" in which USCIS defers initiation of removal proceedings for a certain period. *Id.* USCIS' issuance of deferred action does not limit ICE's ability to initiate removal proceedings or to arrest and detain an individual for purposes of such proceedings. For these reasons, Petitioner's detention is authorized by statute and there is no basis for this Court to order his release.

### 2.    Petitioner's Detention is Constitutional.

Petitioner's claim that his detention is "unconstitutional" (Doc. No. 1, ¶ 13) is unsupported and without merit as the Supreme Court has repeatedly "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Wong Wing v. U.S.* 163 U.S. 288, 235 (1896) (holding deportation proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character."). In *Demore*, the Supreme Court upheld the constitutionality of a statute that

---

[2] ICE rescinded prior policy guidance that provided that if an alien had a pending I-360 or a pending adjustment of status application based on I-360 approval, ICE typically exercised favorable discretion by refraining from taking enforcement actions entirely or doing so under limited circumstances. *See* ICE Directive 11005.3, Using a Victim-Centered Approach with Noncitizen Crime Victims (Dec. 2, 2021). This directive was superseded by ICE Policy 11005.4, Interim Guidance on Civil Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits (Jan. 30, 2025). As such, there are no legal nor policy impediments to arrest, detention, and removal of an individual with an approved I-360 petition.

mandated detention during removal proceedings without access to a bond hearing. *Id.* at 531. In doing so, the Court recognized that it "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522. To ensure an alien's detention comported with the Fifth Amendment's Due Process Clause, the First Circuit in *Hernandez-Lara v. Lyons* held that the government must bear the burden of proof at a bond hearing before an IJ. 10 F.4th 19, 39-41 (1st Cir. 2021). But the First Circuit cast no aspersion as to the constitutionality of detention of aliens under 8 U.S.C. § 1226(a) by ICE generally and instead recognized that the "prompt execution of removal orders is a legitimate governmental interest which detention may facilitate.") (cleaned up).

Here, there is no dispute that Petitioner is detained for the limited purpose of removal proceedings where he can seek a bond hearing and pursue relief from removal. His detention is not indefinite, it will end upon an order of release from an IJ or upon the conclusion of his proceedings. As another session of this Court recently recognized, a brief period of detention for the purpose of removal proceedings or to effectuate removal does not violate the constitution. *See Dambrosio v. McDonald, Jr.*, No. 25-CV-10782-FDS, 2025 WL 1070058, at *2 (D. Mass. Apr. 9, 2025) (Recognizing that detention "for a period of less than three months' time … does not amount to an unconstitutional duration."). As such, per Supreme Court precedent, his detention does not violate the Constitution. *See Wong Wing,* 163 U.S. at 235 ("We think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid").

Petitioner is lawfully detained pursuant to statute, regulation, and the Constitution and this Court therefore lacks authority to order Petitioner's release from custody by extending the requested writ under 28 U.S.C. § 2241(c)(3).

**B.    Petitioner has Failed to Exhaust his Administrative Remedies.**

While Petitioner claims that he is not a danger to the community nor a flight risk and therefore he should not be detained, as the First Circuit has explained, "it is Congress—not the judiciary—that has the responsibility of prescribing a framework for the vindication of those rights." *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 24 (1st Cir. 2007). Here, Congress has established a statutory framework in which Petitioner can seek release from detention while pursuing relief from removal. Explained further by the First Circuit, "[w]hen Congress speaks clearly and formulates a regime that satisfies constitutional imperatives, the courts must follow Congress's lead." *Id.* This remains the case "whether a court approves or disapproves of an agency's *modus operandi*." *Id.*

Additionally, to the extent Petitioner is claiming that his detention is unwarranted because he is not a danger to the community or a flight risk, such claim must be presented to an IJ in a bond hearing, not to the district court via a Habeas Petition. This failure to exhaust also provides a basis for dismissal of this Petition. As the First Circuit has explained, "[g]enerally speaking, a plaintiff's failure to exhaust "her administrative remedies precludes her from obtaining federal review of claims that would have properly been raised before the agency in the first instance." *Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021). While there is no statutory mandate to exhaust a claim for release that could be made to an IJ prior to presenting such claim to the district court, common-law exhaustion "allows an agency the first opportunity to apply its expertise and obviates the need for judicial review in cases in which the agency provides appropriate redress." *Id.* at 256 (cleaned up) (quoting *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 175–76 (1st Cir. 2016)). Here, Petitioner can seek release from detention though a bond hearing. He can appeal a bond decision to the BIA if necessary. As such, Petitioner has access to the relief he requests this Court

13

order and this weighs in favor of requiring exhaustion and denying this Petition on this additional

basis.

**C.      ICE has Discretion to Determine Detention Location and this Court Lacks Jurisdiction to Dictate Petitioner's Detention Location.**

Petitioner acknowledges he filed this Petition to forestall a transfer from the District of

Massachusetts to "a distant detention center in another state" which he alleges would be "in

violation of federal law and the Due Process Clause of the Fifth Amendment."  Doc. No. 1 at 1.

This assertion is wholly without merit and must be rejected.

Congress provided ICE with discretion as to the detention location of individuals within

its custody.  Per 8 U.S.C. § 1231(g)(1), ICE "shall arrange for appropriate places of detention for

aliens detained pending removal or a decision on removal." *See  Edison C. F. v. Decker*, No. CV

20-15455 (SRC), 2021 WL 1997386, at *6 (D.N.J. May 19, 2021) (Acknowledging that

"Congress has provided the Government with considerable discretion in determining where to

detain aliens pending removal or the outcome of removal proceedings.").  Here, ICE arranged for

Petitioner's detention in New Jersey, and this placement fully comports with statute and the

Constitution.  *See Avramenkov v. I.N.S.,* 99 F. Supp. 2d 210, 214 (D. Conn. 2000) (Holding that a

transfer "does not constitute a violation of plaintiff's due process or statutory rights" and that

ICE "is not obligated to detain aliens where their ability to obtain representation and to present

witnesses is at its greatest.").

Additionally, this Court lacks jurisdiction to second-guess ICE's detention decision or to

order ICE to detain Petitioner at a different facility. *See also Guangzu Zheng v. Decker*, No.

14CV4663 MHD, 2014 WL 7190993, at *15–16 (S.D.N.Y. Dec. 12, 2014), *aff'd*, 618 F. App'x

26 (2d Cir. 2015) (Court lacked jurisdiction over the location of an ICE detainee as that is a

discretionary decision that is barred from judicial review); *P.M. v. Joyce,* No. 22-CV-6321

(VEC), 2023 WL 2401458, at *5 (S.D.N.Y. Mar. 8, 2023) ("The Court does not have jurisdiction to review [ICE's] discretionary authority to transfer detainees."); *Mathurin v. Barr*, No. 6:19-CV-06885-FPG, 2020 WL 9257062, at *11 (W.D.N.Y. Apr. 15, 2020) ("Courts accordingly have held that they lack jurisdiction to restrict [ICE's] decisions about whether and where to transfer aliens between facilities."); *Avramenkov,* 99 F. Supp. 2d at 214 (Explaining that "the court has no jurisdiction to review [ICE's] decision to transfer an alien from one locale to another to commence removal proceedings.").

**D.      The Court Lacks Jurisdiction to Review ICE's Initiation of Removal Proceedings.**

Petitioner seemingly challenges ICE's initiation of removal proceedings against him because of his SIJ status and USCIS' issuance of deferred action.  The Court lacks jurisdiction to consider his claim, however.  Section 1252(g) of Title 8 of the United States Code strips courts of "jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by [ICE] to ***commence proceedings*** … against any alien under this chapter" (emphasis added).  Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999).  The Supreme Court explained that Congress imposed the jurisdictional limitation in Section 1252(g) "to give some measure of protection to 'no deferred action' decisions and similar discretionary decisions" because "INS's exercise of discretion [to grant deferred action] opened the door to litigation in instances where the INS chose *not* to exercise it."  *Id.* at 484-85.

Section 1252(g) plainly applies to decisions and actions to *commence* proceedings that ultimately may end in the execution of a final removal order.  *See Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) ("We construe § 1252(g) . . . to include not only a decision in

an individual case *whether* to commence, but also *when* to commence, a proceeding.") (all

emphasis in original); *Obado v. Superior Ct. of New Jersey Middlesex Cnty.,* No. CV 21-10420

(FLW), 2022 WL 283133, at *4 (D.N.J. Jan. 31, 2022) ("Because [p]etitioner challenges the

decision to commence and adjudicate removal proceedings against him, the [c]ourt lacks

jurisdiction to direct [respondents] to terminate [p]etitioner's NTA and/or halt his removal

proceedings.").

Section 1252(g) further bars district courts from considering challenges to the *method* by

which ICE chooses to commence removal proceedings.  *See Alvarez v. U.S. Immigr. & Customs*

*Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from

questioning ICE's discretionary decisions to commence removal" and also from reviewing

"ICE's decision to take him into custody and to detain him during removal proceedings");

*Saadulloev v. Garland*, No. 3:23-CV-00106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024)

("The Government's decision to arrest [petitioner], clearly is a decision to 'commence

proceedings' that squarely falls within the jurisdictional bar of § 1252(g).").

And courts in this district have held that § 1252(g) precludes judicial review of both

constitutional and statutory claims that arise from the commencement of removal proceedings.

*Candra v. Cronen*, 361 F. Supp. 3d 148, 156 (D. Mass. 2019) (explaining that a petitioner's

"attempt to frame his claim in due process language does not change [the] result" that section

1252(g) strips jurisdiction); *Anderson v. Moniz*, No. CV 21-11584-FDS, 2022 WL 375231, at *4

(D. Mass. Feb. 7, 2022) ("Section 1252(g) can serve as a jurisdictional bar even when a

petitioner contends that his due-process rights were violated.").

For these reasons, this Court lacks jurisdiction to consider any cause or claim arising

from ICE's decision to commence removal proceedings against Petitioner.

**E.    The Court Lacks Jurisdiction to Review ICE's Arrest and Detention of Petitioner.**

This Court also lacks jurisdiction to review ICE's discretionary decision to arrest and detain Petitioner. As such, Petitioner's claim that he has no criminal history and is not a danger to the community or a flight risk are not issues for this Court's review or consideration.

This is because Congress has made clear that ICE's "discretionary judgment regarding the application of [§ 1226] shall not be subject to review." 8 U.S.C. § 1226(e). Section 1226(e) specifically directs that "[n]o court may set aside any action or decision by [ICE] under this section regarding the detention of any alien or the revocation or denial of bond or parole." *Id.* This provision blocks judicial review of ICE's discretionary decisions to arrest and detain aliens subject to 8 U.S.C. § 1226.

As the Supreme Court explained in *Demore*, 538 U.S. at 516-17, this provision applies to strip jurisdiction of judicial review to ICE's discretionary judgments and decisions to arrest and detain aliens subject to 8 U.S.C. § 1226. *See also Jennings v. Rodriguez*, 583 U.S. 281, 295-96 (2018) (Section "1226(e) precludes an alien from challenging a discretionary judgment by the [Secretary] or a decision that the [Secretary] has made regarding his detention or release.") (cleaned up). The Supreme Court in *Jennings* explained that Section 1226(e) would not bar jurisdiction of a challenge to "the extent of the Government's detention authority under the statutory framework as a whole." *Id.* Jurisdiction would also not be stripped if the challenge was to "the constitutionality of the entire statutory scheme under the Fifth Amendment." *Id.* at 296. But, if the challenge is simply to ICE's discretionary decision to arrest and detain an alien, as Petitioner has set forth here, then Section 1226(e) squarely applies to strip a court of jurisdiction to review such action. *See Nielsen*, 586 U.S. at 401 (Explaining that Section 1226(e) "applies only to 'discretionary' decisions about the 'application of § 1226

17

to particular cases."); *Hamada v. Gillen*, 616 F. Supp. 2d 177, 181 (D. Mass. 2009) (Concluding that district court lacks jurisdiction under Section 1226(e) to review decision to detain and deny bond to alien and also finding claim that detention violates due process rights without merit "because detention during removal proceedings is a constitutionally permissible part of that process.").

Under the system established by Congress, Petitioner must request release from ICE custody to an IJ, and if dissatisfied with the outcome of such request, to the BIA. The district courts, however, have no role in making such a determination under the facts as presented. As the First Circuit has explained in a case involving ICE's discretionary decisions regarding where and when to make arrests pursuant to 8 U.S.C. § 1226(a), "[i]t is not for [courts] to say whether ICE's strategy is sound public policy, or conversely, whether that strategy is antithetic to sound public policy. That question lies within the domain of the politically accountable branches of the federal and state governments. Our task is simply to decide the pertinent legal issues ….". *Ryan v. U.S. Immigr. & Customs Enf't,* 974 F.3d 9, 18–19 (1st Cir. 2020). Here, Petitioner's detention is lawful and he has not raised any "pertinent legal issues" that this Court has jurisdiction to review. As such, this Petition must be denied.

**F.     Any Challenge to Petitioner's Removal Must Proceed Administratively Before Appeal to the Circuit Court.**

As briefly explained earlier, Petitioner can pursue relief from removal while in removal proceedings and can appeal any removal order to the BIA and to the circuit court if necessary. As such, Petitioner's claim that "he is highly likely to be successful in removal proceedings" must proceed administratively before eventual appeal to the circuit court—Congress, however, has channeled these claims away from the district court. Doc. No. 1, ¶ 16.

In passing the REAL ID Act, Congress prescribed a single path for judicial review of orders of removal entered through the administrative process: "a petition for review filed with an appropriate court of appeals."  8 U.S.C. § 1252(a)(5); *Gicharu v. Carr*, 983 F.3d 13, 16 (1st Cir. 2020).  Per § 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, ***arising from any action taken or proceeding brought to remove an alien from the United States*** . . . shall be available only in judicial review of a final order under this section" (all emphasis added).  *See also* 8 U.S.C. § 1252(a)(2)(D) (providing that a circuit court can consider "constitutional claims or questions of law" in the petition for review); *Gicharu*, 983 F.3d at 16 ("Adding belt to suspenders, section 1252(b)(9) strips federal courts of jurisdiction to decide legal and factual questions arising from an alien's removal in any other context, ***including on a petition for a writ of habeas corpus***.") (emphasis added).

As another session of this Court has explained: "By law, the power to establish immigration controls, and to establish a process for resolving immigration disputes, rests with Congress, subject only to the restraints of the Constitution."  *Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *2 (D. Mass. Oct. 1, 2018).  Stated further by Chief Judge Saylor, "Congress has created a statutory procedure that does not include a role for the district courts; indeed, it has expressly stripped district courts of jurisdiction to hear such disputes. Such issues are remitted by law to the immigration authorities, subject to review by the Courts of Appeals." *Id.*  This Court cannot "ignore or defy the law, even in highly sympathetic circumstances.  To do so would be a fundamental violation of its most basic responsibilities." *Id.*

As such, any future challenge to a removal order or any legal or factual questions that arise from removal proceedings must be presented administratively and then to the circuit court. This Court, however, lacks jurisdiction to review such questions through this Petition.

## CONCLUSION

For the above reasons, Petitioner's detention is lawful pursuant to statute, regulation, and the Constitution. Additionally, Petitioner has failed to exhaust his administrative remedies prior to filing this Petition. Finally, the Court lacks jurisdiction over ICE's discretionary decisions to arrest, detain, and initiate removal proceedings against Petitioner. As such, this Court must deny his request for release.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: June 3, 2025                    By:    */s/ Mark Sauter*
                                              Mark Sauter
                                              Assistant United States Attorney
                                              United States Attorney's Office
                                              1 Courthouse Way, Suite 9200
                                              Boston, MA 02210
                                              Tel.:(617) 748-3347
                                              Email: mark.sauter@usdoj.gov

## CERTIFICATE OF SERVICE

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: June 3, 2025                    By:    */s/ Mark Sauter*
                                              Mark Sauter
                                              Assistant United States Attorney